UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SWISS NATIONAL INSURANCE COMPANY                    Index No. 07 CIV 9423
a/s/o Bystronic Maschinen AG
Switzerland and Bystronic, Inc.,

                        Plaintiff,

    -against-

BLUE ANCHOR LINE, a division of Transpac
Container Systems Ltd., KUEHNE & NAGEL,
AG and KUEHNE & NAGEL, INC., trading as
BLUE ANCHOR LINE,

                        Defendants.
---------------------------------------------------------------x

## DEFENDANTS' TRIAL MEMORANDUM OF LAW

                                      Ernest H. Gelman, Esq.
                                      Attorney for Defendants
                                      350 Fifth Avenue, Suite 4908
                                      New York, New York 10118
                                      Telephone: (212)332-2345
                                      Fax: (212)332-8301

## PRELIMINARY STATEMENT

Defendants Blue Anchor Line ("BAL"), Kuehne & Nagel, AG ("K&N AG") and Kuehne & Nagel, Inc. ("K&N, Inc.") submit this Trial Memorandum of Law in support of judgment dismissing the complaint herein, or limiting liability, on the basis that the provisions of the U.S. Carriage by Sea Act ("COGSA") and Defendants' Express Cargo Bill limiting defendants' liability are applicable herein.

This Trial Memorandum is limited to the issue of limitation of liability. Defendants' preserve the right to try any and all defenses as set forth in their *Answer* dated November 26, 2007.

## STATEMENT OF FACTS

The Court is respectfully referred to the Stipulation of Facts, and to all of the pleadings had herein, for a full and thorough recital of the facts.

In brief, Swiss National Insurance Company (hereinafter "Swiss National"), seeks to recover damages it allegedly suffered during the inland portion of transportation from New York, New York to Elizabethtown, Kentucky, of an ocean shipping container containing seven (7) packages of machinery owned by its assured, Bystronic Maschinen AG Switzerland ("Bystronic Switzerland") and Bystronic, Inc. ("Bystronic").

Defendant, BAL, is engaged in business as a non-vessel operating common carrier ("NVOCC"), and conducts business to and from and within the United States. A

NOVCC is a common carrier that does not operate the vessels by which the ocean transportation is provided and is a shipper in its relationship with an ocean carrier, 46 C.F.R. §515.2(o)(2).

Defendant, K&N, AG, served in this case solely as agent for BAL. Defendant K&N, Inc. served as a freight forwarder for BAL in arranging for the inland transport.

In October, 2005, Bystronic Switzerland, requested that K&N AG arrange for the transportation of a number of containers of machinery parts and accessories, comprising a glass manufacturing machine, from Bystronic Switzerland's factory in Buetzberg, Switzerland to Bystronic in Elizabethtown, Kentucky.

Thereafter, on or about October 5, 2005, at Buetzberg, Switzerland, Bystronic caused delivery to defendant BAL shipment consisting of numerous packages in six ocean shipping containers, including one numbered TRLU 924789-5 containing 7 packages, all being part of the glass manufacturing machine. BAL agreed to transport the shipment to Rotterdam, by truck and there load the cargo aboard the M.V. ESSEN EXPRESS for carriage to New York; and, thereafter, to carry the shipment by truck over the road from New York to Elizabethtown, Kentucky. There it was to be delivered to Bystronic, Inc., c/o AGC Automotive Americas, the consignee. All carriage was to be performed in accordance with the terms and conditions of an Express Cargo Bill combined transport intermodal bill of lading issued by defendant BAL numbered 2111-4264-508.016 dated on or about October 5, 2005.

On October 21, 2005 while being carried by truck from New York toward Elizabethtown, Kentucky, container number TRLU 924789-5, was involved in an accident on Interstate US 42 East near Warsaw, Kentucky. The container rolled over onto its right side with the tractor pulling the container catching fire. A portion of the shipment was ejected from the container, and as a result was damaged.

The shipment and container TRLU 924789-5 were thereafter brought to the facilities of Leeks Wrecker Service for examination. One of the items, a Line Control Cabinet, was damaged to the extent that plaintiff regarded it as a total loss. The balance of the shipment within the container was repairable.

Thereafter plaintiff, Swiss National, paid their assureds, Bystronic, for the damages sustained to the machinery parts and accessories in container TRLU 924789-5.

## POINT I

## THE U.S. CARRIAGE BY SEA ACT (COGSA), AND NOT THE CARMACK AMENDMENT, CONTROLS THE RIGHTS AND OBLIGATIONS OF THE PARTIES

A. Carriage of Goods by Sea Act. (COGSA)

The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. Section 1300 *et seq.* applies as a matter of law to all bill of lading contracts of carriage involving trade between foreign port and port of the United States. The notable benefits of COGSA are a one-year time bar and $500 per package limitation of liability, Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415 (5th Cir. 1981).

4

In this case, the carriage of goods is subject to COGSA because it involves trade between foreign port (Rotterdam) and the United States. Additionally, the BAL Express Cargo Bill states, on its front, that COGSA applies to this shipment of goods (Exhibit 2, Stipulation of Facts):

"NOTICE: The Laws and/or International Conventions applicable to Port to Port Shipments are limiting by virtue and/or by incorporation into this Express Caro Bill the Carrier's liability to certain amounts per package or customary freight unit for Carriage to or from ports in the United States to a maximum amount of US$500,-per package or customary freight as per U.S. Carriage of Goods by Sea Act, 1936, unless the Merchant declares a higher cargo value below and pays the Carrier's ad valorem freight rate…"

Plaintiff did not declare a higher value and therefore agreed to the limitations of COGSA.

COGSA provides, in 46 U.S.C. §1307, that nothing contained in the Act shall prevent the carrier and shipper from extending COGSA provisions *ex contractue* to the period prior to loading and after discharge of goods from the ship. The Southern District Court of New York has confirmed that COGSA limitations will apply where extended by contract. See, Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc. 2007 U.S. Dist. LEXIS 14356, 2007 A.M.C. 791 (S.D.N.Y. 2007) which held that an NOVCC or other non-rail carriers are entitled to the benefit of the COGSA package limitation under the parties' contracts.

In this case, the carriage of goods involved both ocean and inland segments - ocean carriage from Rotterdam to New York, and truck from New York to Kentucky. Pursuant to ¶28.1 of the Express Cargo Bill, (Exh.3, Stip. of Facts) which is excerpted

below, the parties contracted to extend the COGSA provisions to the entire time the cargo was within defendants' custody:

"¶ 28.1 If this Express Cargo Bill covers the Carriage of Goods to or from parts of the Untied States of America this Express Cargo Bill shall be subject to United States Carriage of Goods by Sea Act (USA COGSA), which shall be incorporated herein, end (sic) the provisions of said Act shall govern before loading after discharge and throughout the entire time the Goods are in the custody of the Carrier…. "

B. The Carmack Amendment

Plaintiff would have defendants be liable under the Carmack Amendment, 49 U.S.C. §14706. The Carmack Amendment "…applies to carriage by railroad or by railroad and water if the carriage is under common control, management, or arrangement for a continuous carriage or shipment, including transportation in the United States between a place in the United States and a place in a foreign country…" Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co. 456 F.3d 54, 2006 A.M.C. 1817, 2006 U.S. App. LEXIS 17385, p. 11 (2d Cir. 2006). Liability under the Carmack Amendment is for the actual loss or injury to the property, 49 U.S.C. §14706(a).

The Second Circuit United States Court of Appeals in Sompo Japan, supra, held that the Carmack amendment is applicable to combined transport, specifically rail transport "…Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading…"(p. 62).

The Southern District Court in Rexroth, supra, has distinguished Sompo Japan, as being applicable only to certain rail carriers:

"Sompo Japan addresses the impact of the Carmack Amendment, which applies only to certain rail carriers, to the liability of a rail carrier. But the issue of a rail carrier is not presented here. The issue in this case is whether an NOVCC or other non-rail carriers are entitled to the benefit of the COSA package limitation under the parties' contracts. Nothing in Sompo Japan sheds any light on that question…." (p.7)

Thus, in cases where the domestic portion of an international shipment is not by rail carrier, COGSA, and not the Carmack Amendment, will apply. See, Alpina Ins. Co. v. Trans Am. Trucking Service, Inc., 2004 U.S. Dist. LEXIS 14264, (S.D.N.Y. 2004), where in a similar case of combined ocean and truck transport utilizing a through bill of lading issued by BAL, where damage occurred on the inland portion, the Carmack Amendment was held to inapplicable, and the limitations of COGSA were held to apply. See also, Altadis USA, Inc. v. Sea Star Line LLC, 458 F. 3d 1288, 2006 A.M.C. 1846 (11 Cir. 2006) (Carmack Amendment does not apply to a shipment from a foreign country to the United States where trip covered by single bill of lading).

It should be noted that the Sompo Japan decision has been criticized as departing from the holdings in the majority of the other circuits, see NOTE: Sompo Japan Insurance Co. of America v. Union Pacific Railroad: The Second Circuit's Recent Movement Away from Uniformity in Its Application of the Carmack Amendment, 31 Tulane Maritime Law Journal 639 (2007), citing decisions by the Eleventh, Fourth, Sixth, and Seventh Circuits that directly contradict Sompo (see, e.g. Shao v. Link Cargo

(Taiwan) Ltd., 986 F.2d 700, 1993 A.M.C. 1861 (4th Cir. 1993), Capitol Converting Equip, Inc. v. LEP Transp. Inc., 965 F.2d 391, 1993 A.M.C. 1609 (7th Cir. 1992).

Finally, although the BAL Express Cargo Bill in Clause 1.1, (Exhibit 3, Stipulation of Facts) mandates that "compulsory national law" be applied to the shipment at issue, in a another previous case involving the BAL Bill of Lading, Allianz CP Gen. Ins. Co. v. Blue Anchor Line, 2004 U.S. Dist. LEXIS 8175, 2004 A.M.C. 1266 (S.D.N.Y. 2004) the Southern District Court of New York held that COSGA applies, notwithstanding this language.

Based on the foregoing, COGSA controls the rights and obligations of the parties.

## POINT II

## COGSA LIMITATIONS MAY BE EXTENDED EX CONTACTUE TO ITS AGENTS

The Carrier may extend its COGSA limitations *ex contractue* to agents and independent contactors of the carrier by the incorporation of a "Himalaya Clause" into the bill of lading. A Himalaya Clause is an exculpatory provision which extends to non-carriers the protection available to the carrier. See, Colgate Palmolive Co. v. M/V Atlantic Conveyor, 1996 U.S. Dist. LEXIS 19247, 1996 A.M.C. 1478 (S.D.N.Y. 1996).

8

Paragraph 17 (C) of the BAL Express Cargo Bill contains a Himalaya Clause (see Exh. 3, Stipulation of Facts), as follows:

> **"(C) Exemptions and Limitations of Servants, Agents, Stevedores, etc.**
> It is understood that the Carrier shall require and utilize the services of others in the performance its undertakings with respect to the Goods transported or to be transported as described hereon and it is expressly agreed between Merchant and the Carrier that each and every Participation Carriers, master, officer, servant, independent contractor, stevedore, tower, etc. engaged or employed by the Carrier in connection with the carriage hereunder shall be a beneficiary of this contract and shall be entitled to al exemptions form and limitations of liability which the Carrier has under this Express Cargo Bill and the applicable law, the Carrier entering into this Agreement not only on its behalf, but also as agent and trustee of each person and contractor described above, all of whom shall be deemed to be a party to this agreement to the extent of being afforded and entitled to the exemptions, immunities and limitations of liability accorded to the Carrier hereunder…"

Thus, the limitations applicable in the BAL express cargo bill would not apply not only apply to BAL but to defendant K&N AG, and defendant K&N, Inc. and to all other subcontractors.

**POINT III**

**THE SUIT IS TIME-BARRED UNDER COGSA**

Section 1303(6) of COGSA provides that "…the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year of delivery of the goods or the date that the goods should have been delivered…" Where the bill of lading incorporates COGSA, the one-year statute of limitations will apply, Alpina Ins. Co. v. Trans Am. Trucking Service, supra.

In this case, the Express Cargo Bill incorporates all of the provisions of COGSA, including the one-year statute of limitation. By virtue of the loss having occurred on October 21, 2005 and suit having been commenced on October 22, 2207, suit was brought after the one-year time bar. Therefore, under this provision, all defendants are entitled to be released from liability.

## CONCLUSION

Based on the foregoing, Defendants BAL, K&N AG and K&N, Inc. request judgment dismissing the complaint, or limiting liability herein.

_____
Ernest H. Gelman, Esq. (EHG 4748)
Attorney for Defendants
350 Fifth Avenue, Suite 4908
New York, New York 10118
Telephone: (212)332-2345
Fax: (212)332-8301

To: James P. Karuzlis, Esq.
    Badiak & Will, LLP
    Attorney for Plaintiff
    106 3rd Street
    Mineola, New York 11501