UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SWISS NATIONAL INSURANCE            :
COMPANY,                            :
                                    :
                Plaintiff,       :
                                    :
                                    :    **MEMORANDUM AND ORDER**
                                    :    07 Civ 9423 (LBS)
               v.                :
                                    :
BLUE ANCHOR LINE, et al.,           :
                                    :
                Defendants.      :
------------------------------------------------------------x

SAND, J.,

       This maritime action between Swiss National Insurance Company ("Swiss National") and Blue Anchor Line, Kuehne & Nagel, AG, and Kuehne & Nagel, Inc. (collectively, "Blue Anchor") has been submitted for judgment as to liability on stipulated facts.

## Background

       In 2005, Blue Anchor transported seven packages of machinery from New York, New York to Elizabethtown, Kentucky for a company called Bystronic Maschinen AG Switzerland and Bystronic, Inc. (collectively, "Bystronic").[1]  Blue Anchor served as a non-vessel operating common carrier, meaning that it did not operate the vessels by which the ocean transportation was provided.  One bill of lading was issued, covering the entire intermodal carriage of the shipment from Switzerland to Kentucky.  Swiss National

---

[1] The facts in this section are drawn, except as noted, from the Joint Stipulation of Facts submitted by the parties.

provided all-risk ocean marine cargo insurance to Bystronic for the shipment and now brings this suit for damage to the cargo during transportation.

The shipment left Buetzberg, Switzerland and was transported by truck from Beutzberg to Rotterdam, Switzerland, and by ship from Rotterdam to New York, New York. The shipment arrived in New York in good condition and was then moved by truck to Elizabethtown, Kentucky. However, on October 21, 2005, one of the containers was involved in an accident and was seriously damaged. Some of the contents of the container have no residual value, and others were able to be repaired with additional expense. Swiss National paid Bystronic $215,917.90 pursuant to the insurance policy and now brings suit to claim that sum from Blue Anchor.

In a stipulation entered into by the parties on March 14, 2008, it was agreed that "this case may be tried by the Court as to liability only based on the agreed set of facts set forth herein." (Stip. of Facts at 1). The parties, having determined that the issue of liability in this case could be decided on stipulated facts, thereby waived their right to present live testimony and removed such attendant issues as witness credibility from the purview of this Court. The Court, however, is "free to resolve any disputed factual matters and to draw any inferences from the documents submitted as if this action were tried in open court." Id.

## Discussion

The conflict in this case is whether, under current federal law, the parties were permitted to limit their liability under the Carriage of Goods and Sea Act ("COGSA") and extend that limited liability to the inland portion of the transportation contract.

Under COGSA, the statute of limitations is one year and there is a $500 per package limitation of liability. The contract between the two parties states that COGSA's liability limitation applies "throughout the entire time the Goods are in custody of the Carrier," including the inland segment of the trip within the United States.

Swiss National argues that liability for the loss is governed by the Carmack Amendment, 49 U.S.C. §14706. Swiss National argues that the Carmack Amendment is national law, which overrides the parties' extension of COGSA's limitation of liability. Whereas COGSA establishes a negligence-like liability regime, the Carmack Amendment imposes a regime closer to strict liability, and provides for a statute of limitations of two years for bringing a civil action against a carrier.

Specifically, the parties' dispute is over a recent Second Circuit decision, Sompo Japan Ins. Co. of Am. v. Union Pac. R.R., 456 F.3d 54 (2d Cir. N.Y. 2006). In Sompo, the Second Circuit held that the Carmack Amendment "applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading, even where the parties have extended COGSA's liability provisions." Sompo Japan Ins. Co. of Am. v. Union Pac. R.R., 456 F.3d 54, 75 (2d Cir. N.Y. 2006). On its face, the Second Circuit's decision in Sompo seems readily applicable here,[2] but defendants make a number of arguments that we will address in turn.

First, though, a discussion of the case law up to this point is relevant. About twenty years ago, the Second Circuit had held that parties could contractually extend COGSA's application beyond its normal parameters – that is, they could contractually

---

[2] As discussed below, although Sompo refers to the railroad section of the Carmack amendment, the essentially identical language of the motor carrier section of the amendment strongly suggests that the principles in Sompo apply uniformly to both the rail and motor sections of Carmack.

3

extend COGSA to the inland domestic section of an international shipment. However, they held that "[w]hen [the parties] do so … COGSA does not apply of its own force, but merely as a contractual term. Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313, 315 (2d Cir. N.Y. 1983).

Colgate and its progeny, however, were to some extent overruled by the Supreme Court's decision in Kirby. In Kirby, the Supreme Court held that COGSA limitations of liability would be enforced even when contrary to state liability law. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 28 (U.S. 2004) ("Applying state law to cases like this one would undermine the uniformity of general maritime law… In protecting the uniformity of federal maritime law, we also reinforce the liability regime Congress established in COGSA."). The Second Circuit has conceded that Kirby effectively overruled its Colgate decision, as long as the shipment includes a "substantial" sea component.[3] Sompo, 456 F.3d at 71 ("In Norfolk Southern Ry. Co. v. Kirby, the Supreme Court held that a through bill of lading consisting of a 'substantial' sea component is governed by federal law, even if the bill covers inland carriage. Thus, Kirby would appear to effectively overrule those cases, like Colgate Palmolive, that hold that contracts extending COGSA's terms to inland transportation must yield to conflicting state law, but only to the extent that the bills of lading in those cases consist of a sea component that is 'substantial.'").

The applicability of the Carmack Amendment was not argued to the Court in Kirby, so the question of whether COGSA or Carmack, two federal statutes, controls the

---

[3] The parties do not argue, here, that the sea component of the transport was not "substantial" under Kirby.

4

liability for a shipper on a domestic segment of a multimodal journal, has not been addressed by the Supreme Court.[4]

We believe that the Second Circuit's decision in Sompo, which defendants argue is contradictory to the Kirby case, actually upholds the same policy principles.  In Kirby, the Supreme Court upheld the applicability of COGSA's extended limited liability to create uniformity for shippers throughout their transport, whether by sea or on land.  The Second Circuit, in Sompo, uses another federal statute, the Carmack Amendment, to create a similarly uniform system of liability.  Unlike situations where COGSA might conflict with the law of numerous states during a single voyage, the Carmack Amendment applies uniformly to all inland segments of rail or motor transportation, and thus the principle of uniformity is not sacrificed in its enforcement.

Furthermore, this reading is supported by the language of COGSA.  "By its terms, COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded on to the time when they are discharged from the ship.'" Kirby, 543 U.S. 14, 29 (2004)  (citing 46 U.S.C. App. § 1301(e)).  Although there is no dispute that the provisions of COGSA may be extended beyond discharge from the ship, the statute also states explicitly, as the Second Circuit noted, that it "does not affect laws governing the carriage of goods prior to loading and after discharge."  Sompo, 456 F.3d at 72-3 (citing 46 U.S.C. app. § 1311).

The Second Circuit concluded in Sompo that the Kirby Court had not considered this provision of COGSA in its analysis, because of its conclusion that state law was

---

[4] The Supreme Court granted certiorari this term on a case presenting this issue, Altadis USA, Inc. ex rel. Fireman's Fund Insurance Co. v. Sea Star Line, LLC, 458 F.3d 1288 (11th Cir. 2006).  See Altadis USA, Inc. v. Sea Star Line, LLC, 127 S. Ct. 853, 166 L. Ed. 2d 682, 2007 U.S. LEXIS 17 (U.S., 2007)  However, certiorari was dismissed thereafter on consent of the parties.  Altadis USA, Inc. v. Sea Star Line, LLC, 127 S. Ct. 1209, 166 L. Ed. 2d 1012, 2007 U.S. LEXIS 1328 (U.S., 2007)

inapplicable to the maritime contract at issue. Sompo, 456 F.3d at 75 ("Once the Kirby Court had determined that federal, not state, law governed the bill of lading, state law would not have been 'applicable in the absence of [COGSA],' and therefore § 1311 did not require that the period of responsibility provision yield to state law.").

We think Kirby and Sompo are not contradictory, and thus follow the Second Circuit's holding that Carmack's liability provisions apply.

Finally, plaintiff urges us to read Sompo narrowly, as only applicable to the rail portion of the Carmack Amendment. However, plaintiff's argument is undermined by the fact that the sections of the rail and motor statutes are essentially identical. See 49 U.S.C. §11706, 49 U.S.C. §14706 (providing for the same circumstances giving rise to liability, the same periods of limitations, and the same potential damages) Furthermore, it is clear from the substance of Sompo that it was meant to apply to the Carmack Amendment in its entirety, and not just to the rail portion. In particular, the Court pointed out in the opinion that "[a]lthough [a prior case] involved motor, rather than rail, carriage, the post-codification language … is identical regardless of the mode of transport" and found that it was bound, in a rail case, by its prior holding in a motor case under Carmack. Sompo, 456 F.3d at 68.

Finally, defendants attempt to distinguish Sompo by citing Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc., 2007 U.S. Dist. LEXIS 14356 (S.D.N.Y. 2007). In Rexroth, the district court noted that despite the fact that "the circumstances … presented [in the Sompo case… [are] in many respects are comparable to those at bar," the Sompo case was not dispositive because it addressed the liability of rail carriers, and not motor

6

carriers. However, as discussed above, we believe that Sompo is equally applicable to the motor carrier section of the Carmack Amendment.

Finally, defendants argue that Sompo has been criticized as contrary to the holdings in other circuits. Absent Supreme Court review of the alleged split in the circuits, we of course are bound by the law in the Second Circuit.

## Conclusion

We hold that liability in this case is governed by the standards set forth in the Carmack Amendment, 49 U.S.C. § 14706, and not by the $500 limitation of liability under COGSA for which the parties contracted. Accordingly, this suit is timely under Carmack and defendants are liable to plaintiffs for the full value of the property that was damaged, as set forth in the Carmack Amendment.

**SO ORDERED.**

Dated: June 10, 2008
New York, NY

/s/ Leonard B. Sand
U.S.D.J.